CARTER, & UX. *appellants*, *vs.* THOMAS, *Ex'r.*

The alienation of real estate by the testator himself, after he has devised the same by will, is a revocation of the will only as to the part thus alienated. The will being suffered to remain uncancelled, evinces that his intention was not changed with respect to the other property therein devised or bequeathed.

THE question in this case was whether the will of *Joseph Thomas* was revoked ; he having devised part of his real estate to his daughters, and the residue to his two sons, whom he also made residuary legatees ; and afterwards having in his lifetime sold and conveyed the same land to one of the sons, by deed. The Judge of Probate having decreed that this was no revocation of the whole will, one of the heirs appealed to this court.

*Boutelle*, for the appellants, relied on the rule that a deed of all the estate devised, though inoperative as a deed, is a revocation of the will. 1 *Roberts on Wills* 214, 219. *Powell on devises* 404, 405. *Toller's Ex.* 19. *Cowp.* 90. *Sparrow v. Hardcastle* 7. *D. & E.* 418, *note. Osgood v. Breed* 12 *Mass.* 534. *Cooper's Justinian* 497.

*Sprague*, for the respondent.

The opinion of the court was read at *November* term, 1826, in *Cumberland*, as drawn up by

WESTON J. The will in question is executed with the formalities required by the statute ; and it does not appear to have been revoked in any of the modes therein prescribed. It is urged that the statute was not intended to exclude implied revocations ; and that, by a conveyance of the real estate upon which the will was to operate, by the testator in his lifetime, by implication of law, the will before us was thereby revoked. The position, that revocations of this description remain unaffected by

the statute, is supported by respectable English authorities, since their statute of frauds, which contains provisions upon the subject of express revocations of devises of lands and tenements, similar to those which are to be found in our statutes relative to wills and testaments. It has been questioned, in *Toller on Ex'rs p.* 20, whether an attempt by the testator to convey, which is inoperative by reason of some defect, or want of necessary legal formality, in the mode of conveyance adopted, although indicative of a change of intention in the testator, would, since the statute, amount to a revocation; any more than a subsequent will, imperfectly executed. *Toller* however cites no authority for this query; and in *Cave v. Holford*, 3 *Ves. Jun.* 650, the old cases of implied revocations, from instruments not completed, are adverted to with approbation.

The general rule of law is, that a man must be seized of the estate he devises, at the time he makes his will; and that the estate must continue unaltered, and without any new modification, to the time of his death. *Powell on devises* 377. *Toller* 22. It has accordingly been repeatedly held, that any disposition of the estate, made by the testator, subsequent to his will, by which he holds the same by new limitations, or as a new purchase, although his beneficial interest therein remains as before, amounts to a revocation. *Powell,* 378, and the cases there cited.

By the revocation of a will, we generally understand an act, by which the will ceases to have any effect or efficacy. And this may be considered the meaning of the term, strictly and accurately speaking. It is not however uniformly used in this sense by legal writers, or in English judicial opinions; but it is frequently applied to cases, where the will operates upon some estates, but does not operate upon others, by reason of some conveyance, or new modification, made therein by the testator in his life time. When therefore this position is laid down generally, as it is in *Roberts*, cited by the counsel for the appellants, that an alteration made in the estate devised, amounts to a revocation of the will, we must understand the meaning to be, so far as such alteration is inconsistent therewith. Thus *Powell,* 377, states that any alteration in the estate will, at law, operate as a

revocation ; and he cites, in support of this position, *Burgoyne v. Fox* 1 *Atk.* 576, which was a case of partial revocation only.

In the case of *Brydges v. The Dutchess of Chandos*, 2 *Ves. Jun.* 417, the doctrine of implied revocations was considered at large by the chancellor ; and the same rules declared to be applicable thereto in courts of equity, as in courts of law.   And he states it as a principle, not to be shaken in point of authority,  " that any new disposition made subsequent to the will, or, in other words, any conveyance of that which had been conveyed by the will, shall defeat the will.   It implies an alteration ; and the common rule that the estate must pass by the last conveyance, applies ; but then it must be a conveyance of the whole estate ; it must extend as far as that appointment, which the will has made ; for if it is but of a part, it affects the will no further than that part goes.   If it is of a partial interest only, it will not operate as a revocation of the rest."

In *Cave v. Holford*, before cited, *Eyre C. J.* in an elaborate opinion, in the particular result of which, however, he differed from his brethren, more than once stated that the term "revoked" and "revocation," has been used with very little precision, and frequently in an improper sense.  *Dane* says, 4 *Abr.* 575, that in several cases, a mere inoperation of a will is called a revocation. And in the same *vol.* 576, 577, he states that an alienation of a part of the estates devised, revokes only as to that part, for which he cites several authorities.   Where a portion only of that which is the subject matter of the will is parted with by the testator in his life time, the will cannot bear the effect originally intended ; and whether the whole will remains, but partially defeated in its operation, or such alteration is regarded as a revocation *pro tanto*, the will has its effect upon the estate, which is left unaltered.

The counsel for the appellants has cited the case of *Osgood v Breed*, 12 *Mass.* 525, in which *Jackson J.* in delivering the opinion of the court, adverts to the ninth section of the statute of wills of Massachusetts, *stat.* 1785, *ch.* 12, in which it is provided that a will, purporting to dispose of both real and personal estate, but not so executed as to pass the former, shall not be

allowed as a testament of personal estate only. The principle he says, is founded in justice, and "applies with equal force to every case, where a supposed will is originally defective and ineffectual, as to any material part. In distributing one's estate, especially if among children, each devise and bequest is in some measure the condition of every other." But very different is the case of a subsequent conveyance, by the testator, of a part of the estate devised. Upon this the will does not operate, not by reason of any defect therein ; but because it pleased the testator to make a different disposition of such part of the estate, which it is perfectly competent for him to do; either in that mode, or by a new will or codicil. Conveying a part of the estate, upon which the will would otherwise operate, indicates a change of purpose in the testator, as to that part ; but suffering the will to remain uncancelled, evinces that his intention is unchanged with respect to other property bequeathed or devised therein.

The probate of a will establishes the capacity of the testator, and the fact that it has been executed with the formality required by law. But upon what particular estate, real or personal, it may operate, is a question open for examination in the courts of common law. Those claiming the personal property under the will, are required to show that it belonged to the testator, at the time of his decease. And those claiming real estate devised therein, will be holden to prove that, at the time of making the will, the testator was seized of the same, and died seized thereof, without any change or alteration of title.

The opinion of the Court is, that the will in question is entitled to probate ; and the decree of the judge allowing the same is affirmed with costs.